**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

2014 MAR 26  AM 9: 50

JUSTIN CHATOV,
an individual,

Case No.:

     Plaintiff,

8:14-CV-734-T-30AEP

v.

PHH MORTGAGE CORPORATION,
a foreign profit corporation,

     Defendant.

_____/

## COMPLAINT

**COMES NOW,** Plaintiff, JUSTIN CHATOV (hereinafter, "Plaintiff"), by and through the undersigned counsel, and sues Defendant, PHH MORTGAGE CORPORATION (hereinafter, "Defendant"), and alleges:

### PRELIMINARY STATEMENT

This is an action for damages brought by an individual consumer for Defendant's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA"), the Telephone Consumer Protection Act, 47 U.S.C. Section 227 (hereinafter, the "TCPA"), the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605 (hereinafter, the "RESPA"), and for declaratory judgment and injunctive relief in equity.

### JURISDICTION AND VENUE

1.     Jurisdiction of this Court arises under 47 U.S.C., Section 227(b)(3), 12 U.S.C. Section 2614, 28 U.S.C., Section 1337, and supplemental jurisdiction exists for the FCCPA claims pursuant to 28 U.S.C., Section 1367. Declaratory relief is available pursuant to 28 U.S.C., Sections 2201 and 2202.

1

TBA - 22588
$400

2.     Venue in this District is proper because Defendant transacts business in this District and the conduct complained of occurred in this District.

3.     At all material times herein, the conduct of Defendant, complained of below, occurred in Sarasota County, Florida.

4.     At all times herein, Plaintiff is an individual residing in Sarasota County, Florida.

5.     Defendant is a foreign profit corporation existing under the laws of the State of New Jersey that, itself and through its subsidiaries, regularly services and attempts to collect consumer mortgages in Sarasota County, Florida.

## GENERAL ALLEGATIONS

6.     At all times herein, Defendant is a "creditor" as defined by Florida Statutes, Section 559.55.

7.     At all times herein, Defendant attempts to collect a debt, specifically a mortgage on real property located at 3249 Beneva Road, Unit 202, Sarasota, FL 34232 and referenced by original account number ending in -7646 or current account number ending in -5751 (hereinafter, the "Debt").

8.     At all times herein, the Debt was a consumer debt, incurred primarily for personal, household or family use.

9.     At all material times, the Defendant was a "person" subject to Florida Statutes, Section 559.72. *See* Florida Statutes, Section 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

10.     At all times herein, Defendant's conduct, with regard to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(5).

2

11.    At all times herein, Defendant acted itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

12.    All necessary conditions precedent to the filing of this action occurred or have been waived by Defendant.

## FACTUAL ALLEGATIONS

13.    On or about March 30, 2007, Plaintiff entered into a mortgage agreement with Sunbelt Lending Services (hereinafter, "Original Mortgage"). Please see attached a true and correct copy of the relevant portions of the Original Mortgage labeled as Exhibit "A1-A3."

14.    On or before May 12, 2009, Defendant became the owner, or servicer, or both, of the Debt.

15.    On or about May 12, 2009, Plaintiff applied for a loan modification under the Home Affordable Modification Program or HAMP.

16.    On or about September 15, 2009, Plaintiff received an e-mail from Defendant's employee or representative "Sheri Fulton," the loan processor on Plaintiff's HAMP application, which requested certain documents to qualify Plaintiff for the HAMP loan modification and finalize the HAMP loan modification process. Please see attached a true and correct copy of said e-mail labeled as Exhibit "B."

17.    Between September 15, 2009 and October 26, 2009, Plaintiff sent the documents requested by Defendant in the above-referenced e-mail to Defendant.

18.    On or about October 26, 2009, Defendant approved Plaintiff's HAMP loan modification ("Loan Modification").

19.    Under the Loan Modification, Plaintiff's total monthly payments on the

3

Debt would be $782.91 for sixty (60) months, with payments to begin on November 1, 2009.

     20.    On or about November 7, 2009, Plaintiff signed, notarized, and sent Defendant the Loan Modification agreement. Please see attached a true and correct copy of said Loan Modification labeled as Exhibit "C1-C7."

     21.    Between November 2009 and February 2011, Plaintiff made all required payments pursuant to the Loan Modification agreement with Defendant. Please see attached a true and correct copy of the relevant pages of Plaintiff's bank statements and corresponding checks labeled as Exhibit "D1-D23."

     22.    On or about March 14, 2011, Defendant sent Plaintiff a "NOTICE OF INTENTION TO FORECLOSE." Said letter contains the following language:

> The mortgage on your property is in default for the December 01, 2010 payment and is now 4 months past due. At this writing, the TOTAL AMOUNT required to cure your default is $3,480.20. To AVOID FORECLOSURE, we are demanding that you make a payment in "CERTIFIED FUNDS" for the total amount due.

Please see attached a true and correct copy of said letter labeled as Exhibit "E."

     23.    On or about March 14, 2011, Defendant sent Plaintiff a letter which contains the following language: "Enclosed please find your check number 764, dated 03/07/2011, in the amount of $788.06. This check is being returned by us because: Insufficient amount to clear default." Please see attached a true and correct copy of said letter labeled as Exhibit "F."

     24.    On or about March 20, 2011, Defendant sent Plaintiff another HAMP loan modification agreement ("March 2011 HAMP Modification"). In said agreement, Defendant raised Plaintiff's monthly payments to $1,149.13, an amount that was higher

than Plaintiff's payments under the Original Mortgage. Please see attached a true and correct copy of said March 2011 HAMP Modification labeled as Exhibit "G1-G6."

25.     On or before March 31, 2011, Plaintiff retained the Law Offices of Timothy M. Grogan to represent Plaintiff with regard to the Debt ("Foreclosure Counsel"), as a result of Defendant's unlawful Debt collection.

26.     On or about March 31, 2011, Foreclosure Counsel sent Defendant a letter which alerted Defendant to its mistake regarding the alleged default under the Loan Modification, advised Defendant that the March 2011 Modification was an error, and that the issues needed to be resolved. Please see attached a true and correct copy of said letter labeled as Exhibit "H."

27.     Between March 31, 2011 and July 14, 2011, Foreclosure Counsel advised Defendant twice to cease contacting Plaintiff in an attempt to collect the Debt, and that all communication regarding the Debt should be directed to Foreclosure Counsel.

28.     All of the below-referenced collection attempts, both calls and letters, were made despite having actual knowledge of Foreclosure Counsel's representation of Plaintiff with regard to the Debt, despite possessing Foreclosure Counsel's contact information, and despite having been advised that all future communication with regard to the Debt be directed to Foreclosure Counsel's office.

29.     On or about April 8, 2011, Plaintiff received an e-mail from Defendant's employee or representative "Sheri Fulton," which purported to give Plaintiff an explanation as to why he was experiencing difficulties with Defendant and the HAMP loan modification process. Please see attached a true and correct copy of said email labeled as Exhibit "I1-I4."

30.     On or about June 14, 2011, Defendant sent Plaintiff a packet that stated

Plaintiff was not eligible for the HAMP loan modification.  Please see attached a true and correct copy of said packet labeled as Exhibit "J1-J13."

31.     Defendants telephone calls, as more specifically alleged below, were made to Plaintiff's cellular telephone number, 941.957.8424 (hereinafter, "cellular telephone"), using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

32.     Plaintiff is the owner, regular user, and possessor of a cellular telephone with the assigned number 941.957.8424.

33.     On or about June 17, 2011, Defendant called Plaintiff's cellular telephone using an ATDS, a PTDS, or an APV.

34.     The immediately-aforementioned telephone call was placed from telephone number 800.598.8900 and was made in an attempt to collect the Debt.

35.     Further, during the above-referenced telephone call, Defendant left a voicemail message on Plaintiff's cellular telephone using an APV.

36.     On or about June 24, 2011, at approximately 8:54 a.m. EST, Defendant called Plaintiff's cellular telephone using an ATDS, a PTDS, or an APV.

37.     The immediately-aforementioned telephone call was placed from telephone number 856.917.0050 and was made in an attempt to collect the Debt.

38.     Further, during the above-referenced telephone call, Defendant left a voicemail message on Plaintiff's cellular telephone using an APV.

39.     On or about June 24, 2011, Defendant again called Plaintiff's cellular telephone using an ATDS, a PTDS, or an APV.

40.     The immediately-aforementioned telephone call was placed from

6

telephone number 856.917.0050 and was made in an attempt to collect the Debt.

41.    Further, during the above-referenced telephone call, Defendant left a voicemail message on Plaintiff's cellular telephone using an APV which stated that Plaintiff should call "Anna Taylor" at telephone number 888.468.5671.

42.    On or about June 27, 2011, at approximately 9:14 a.m. EST, Defendant called Plaintiff's cellular telephone using an ATDS, a PTDS, or an APV.

43.    The immediately-aforementioned telephone call was placed from telephone number 856.917.0050 and was made in an attempt to collect the Debt.

44.    Further, during the above-referenced telephone call, Plaintiff spoke with Defendant's employee or representative and again advised of Foreclosure Counsel's representation of Plaintiff with regard to the Debt, provided Foreclosure Counsel's contact information, and requested that all future communication with regard to the Debt be directed to Foreclosure Counsel's office.

45.    On or about July 5, 2011, Defendant sent Plaintiff a letter in an attempt to collect the Debt. Please see attached a true and correct copy of said letter labeled as Exhibit "K1-K2."

46.    On or about July 5, 2011, at approximately 5:51 p.m. EST, Defendant called Plaintiff's cellular telephone using an ATDS, a PTDS, or an APV.

47.    The immediately-aforementioned telephone call was placed from telephone number 856.917.0050 and was made in an attempt to collect the Debt.

48.    Further, during the above-referenced telephone call, Defendant left a voicemail message on Plaintiff's cellular telephone using an APV.

49.    On or about July 8, 2011, Defendant sent Plaintiff a letter which stated, "[a]t this time your mortgage account has been referred to an attorney to begin the

7

foreclosure process . . . Again, it is imperative you realize that your account has been sent to an attorney." Please see attached a true and correct copy of said letter labeled as Exhibit "L."

50.    On or about September 9, 2011, Defendant filed a mortgage foreclosure lawsuit against Plaintiff in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida, referenced by case number 2011-CA-007330-NC (hereinafter, "Foreclosure Case"). Please see attached a true and correct copy of said initial pleadings, including the: Summons; Notice of Lis Pendens; and Verified Mortgage Foreclosure Complaint, labeled as Exhibit "M1-M6."

51.    On or about September 25, 2011, Defendant placed a notice on Plaintiff's front door in an attempt to collect the Debt, which stated:

**URGENT**

PLEASE CALL YOUR MORTGAGE COMPANY

CLIENT 954

1-800-330-0423

Please see attached a true and correct copy of said notice labeled as Exhibit "N."

52.    Defendant purposefully placed the immediately-aforementioned notice facing out towards the public.

53.    On or about October 25, 2011, Defendant placed another notice on Plaintiff's front door in an attempt to collect the Debt, which stated:

**URGENT**

PLEASE CALL YOUR MORTGAGE COMPANY

CLIENT 954

1-800-330-0423

Please see attached a true and correct copy of said notice labeled as Exhibit "O."

54.     Defendant purposefully placed the immediately-aforementioned notice facing out towards the public.

55.     On or about October 31, 2011, Foreclosure Counsel filed both a Notice of Appearance and Answer to Defendant's Foreclosure Case. This again gave Defendant actual knowledge of Foreclosure Counsel's representation of Plaintiff with regard to the Debt. Please see attached a true and correct copy of the Foreclosure Case docket labeled as Exhibit "P1-P2."

56.     On or about November 23, 2011, Defendant placed a notice on Plaintiff's front door in an attempt to collect the Debt, which stated:

<u>**URGENT**</u>

PLEASE CALL YOUR MORTGAGE COMPANY

CLIENT 954

1-800-330-0423

Please see attached a true and correct copy of said notice labeled as Exhibit "Q."

57.     Defendant purposefully placed the immediately-aforementioned notice facing out towards the public.

58.     On or before December 9, 2011, Plaintiff sent Defendant another HAMP financial package in his attempts to rectify Defendant's error and resolve the matter in good faith.

59.     On or about December 9, 2011, Defendant acknowledged receipt of Plaintiff's HAMP package, stating that Plaintiff would likely receive a response in thirty (30) days. Please see attached a true and correct copy of said acknowledgment letter labeled as Exhibit "R1-R2."

9

60.     On or about December 14, 2011, Defendant approved Plaintiff for another HAMP loan modification (hereinafter, "Third Modification"). Please see attached a true and correct copy of said Third Modification labeled as Exhibit "S1-S6."

61.     On or about December 28, 2011, Defendant sent Plaintiff a letter acknowledging Defendant's receipt of Plaintiff's HAMP supporting documentation. Please see attached a true and correct copy of said letter labeled as Exhibit "T1-T2."

62.     Plaintiff made all the trial payments under the Third Modification.

63.     On or about December 28, 2011, Defendant placed a notice on Plaintiff's front door in an attempt to collect the Debt, which stated:

Dear Borrower:

**URGENT NOTICE:**

Please contact your mortgage servicer immediately at:

(800) 552 – 3000 .

Thank you

Please see attached a true and correct copy of said notice labeled as Exhibit "U."

64.     Defendant purposefully placed the immediately-aforementioned notice facing out towards the public.

65.     On or about January 2, 2012, at approximately 11:45 a.m. EST, Defendant called Plaintiff's cellular telephone using an ATDS, a PTDS, or an APV.

66.     The immediately-aforementioned call was placed from telephone number 856.917.0050 and was made in an attempt to collect the Debt.

67.     Further, during the above-referenced telephone call, Defendant's employee or representative "Francis Ortiz" (hereinafter, "Ms. Ortiz") left a voicemail message on Plaintiff's cellular telephone with regard to the Third Modification.

68.     On or about March 12, 2012, Defendant again called Plaintiff's cellular telephone using an ATDS, a PTDS, or an APV.

69.     The immediately-aforementioned call was placed from telephone number 856.917.0050 and was made in an attempt to collect the Debt.

70.     Further, during the above-referenced telephone call, Ms. Ortiz left a voicemail message on Plaintiff's cellular telephone stating that "Jennifer Sharkey" would be the processor for Plaintiff's Debt.

71.     On or about March 26, 2012, Defendant sent directly to Plaintiff a packet in an attempt to collect the Debt (hereinafter, "March 2012 Agreement"). Please see attached a true and correct copy of said March 2012 Agreement labeled as Exhibit "V1-V16."

72.     Plaintiff made all the required payments under the March 2012 Agreement.

73.     On or about May 29, 2012, Defendant voluntarily dismissed the Foreclosure Case and released the Lis Pendens (hereinafter, "Voluntary Dismissal"), pursuant to the March 2012 Agreement. Please see attached a true and correct copy of said Voluntary Dismissal labeled as Exhibit "W1-W2."

74.     On or about November 25, 2013, in response to Defendant's allegations of non-payment of the loan, and the subsequent mortgage foreclosure filing and loan modification, Plaintiff tendered a "Qualified Written Request" via certified mail to Defendant. Please find attached a true and correct copy of the said request labeled as Exhibit "X1-X3."

75.     On or about November 30, 2013, Defendant received the Qualified Written Request as evidenced by the United States Postal Service delivery confirmation.

Please find attached a true and correct copy of this confirmation labeled as Exhibit "Y."

76.     As of the filing of this pleading, Defendant has altogether failed to acknowledge or respond to Plaintiff's Qualified Written Request regarding the Debt.

77.     Plaintiff has retained Leavengood, Dauval & Boyle, P.A. (hereinafter, "Undersigned Counsel") for the purpose of pursuing this matter against Defendant and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

78.     Florida Statutes, Section 559.77 provides for the award of up to $1,000.00 statutory damages per independent, temporally displaced violation, plus actual damages, and an award of attorneys' fees and costs to Plaintiff should Plaintiff prevail in this matter.

79.     United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made using any automatic telephone dialing system or an artificial or pre-recorded voice to Plaintiff's cellular telephone in violation of the TCPA or the regulations proscribed thereunder.

80.     Additionally, United States Code, Title 47, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call made using any automatic telephone dialing system or an artificial or prerecorded voice to Plaintiff's cellular phone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

81.     At all times herein, it would have been possible for Defendant to avoid violating the terms of the TCPA.

82.     At all times herein, Defendant did not have Plaintiff's prior express consent to use an automatic dialing system or artificial or pre-recorded voice when calling Plaintiff's cellular phone.  Furthermore, once Defendant had actual knowledge of

Foreclosure Counsel's representation of Plaintiff with regard to the Debt, any such consent was revoked.

83.     Upon information and belief, based upon the aforementioned allegations, Plaintiff believes that Defendant telephone calls made to Plaintiff's cellular telephone using an automatic dialing system or an artificial or pre-recorded voice were made in willful and knowing violation of the TCPA.

84.     United States Code, Title 12, Section 2605(f) provides for the award of up to $1,000.00 statutory damages, plus actual damages, and an award of attorneys' fees and costs to Plaintiff for each failure of Defendant to comply with any part of Section 2605 of Title 12 of the United States Code should Plaintiff prevail in this matter.

85.     As of the date of this complaint, no final judgment regarding the Debt has been obtained by, or transferred to, Defendant.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)**

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

86.     Defendant is subject to, and has violated provisions of, Florida Statutes, Section 559.72(7) by collecting consumer Debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

87.     Specifically, despite having actual knowledge of Foreclosure Counsel's representation of Plaintiff with regard to the Debt, possessing Foreclosure Counsel's contact information, and having been repeatedly advised to run all communication with regard to the Debt through Foreclosure Counsel's office, Defendant engaged in a continuing unlawful Debt collection practice wherein it:

i.   Called Plaintiff's cellular phone, in violation of the TCPA, approximately seven (7) times;

ii.  Placed four (4) notices on Plaintiff's front door, which disclosed information affecting Plaintiff's reputation to any and all persons in Plaintiff's condominium, in violation of the FCCPA;

iii. Sent Plaintiff three (3) letters in an attempt to collect the Debt, in violation of the FCCPA;

iv.  Further, two (2) of the immediately-above referenced letters threatened Plaintiff with Foreclosure; and

v.   Filed a Foreclosure Case against Plaintiff despite having received all payments on the Debt.

88.   Defendant's willful and flagrant violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

89.   As a direct and proximate result of Defendant's actions, Plaintiff has sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)**

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

90.   Defendant is subject to, and has violated provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the Debt with knowledge that the Debt is not legitimate or asserting the existence of the legal right with the knowledge that the right does not exist.

91. Specifically, despite having received all payments pursuant to the Loan Modification, Defendant filed the Foreclosure Case in an attempt to collect an illegitimate Debt.

92. Despite having knowledge that the Debt was paid and having been provided proof of said payment Defendant, however, filed the Foreclosure Case in an attempt to collect the Debt.

93. Further, by filing the Foreclosure Case despite having knowledge that Plaintiff had made all payments on the Debt, Defendant asserted a right that does not exist, as Foreclosure is not applicable on a debtor who has followed all requirements of the agreement creating the obligation.

94. In addition, by placing notices on Plaintiff's front door, as well as filing the Foreclosure case, Defendant engaged in a continuing unlawful Debt collection practice wherein it asserted the right to publicly humiliate Plaintiff and publicize his Debt delinquency to third parties.

95. Lastly, by calling repeatedly calling Plaintiff's cellular telephone using and an automatic telephone dialing system, without prior express consent and despite having received all payments pursuant to the Loan Modification as well as having received actual notice of attorney representation, Defendant engaged in a continuing unlawful Debt collection practice wherein it asserted it had the right to call Plaintiff's cellular telephone, when Defendant knew it had no such right.

96. As a direct and proximate result of Defendant's actions, Plaintiff has sustained damages as defined by Florida Statutes, Section 559.77.

## COUNT THREE:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

97.    Defendant is subject to, and has violated provisions of, Florida Statutes, Section 559.72(18) by intentionally and repeatedly communicating with Plaintiff after being given actual notice that Plaintiff was represented by counsel with regard to the underlying Debt.

98.    Specifically, despite having been repeatedly advised of Foreclosure Counsel's representation of Plaintiff with regard to the Debt, Defendant engaged in a continuing unlawful Debt collection practice wherein it made approximately fifteen (15) individual communications directly to Plaintiff in its attempts to collect the Debt.

99.    Said communications consist of telephone calls, notices on Plaintiff's front door, and letters, all of which were sent or made directly to Plaintiff.

100.    As a direct and proximate result of Defendant's actions, Plaintiff has sustained damages as defined by Florida Statutes, Section 559.77.

## COUNT FOUR:
## TELEPHONE CONSUMER PROTECTION ACT-
## VIOLATION OF 47 U.S.C., SECTION 227(b)(1)(A)

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

101.    Defendant is subject to, and has violated the provisions of, 47 U.S.C., Section 227 (b)(1)(A) by using an automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice to call a telephone number assigned to a cellular telephone service without Plaintiff's prior express consent.

102.    Specifically, Defendant placed approximately seven (7) telephone calls to Plaintiff's cellular telephone without Plaintiff's prior express consent.

16

103.    Further, if Defendant contends it had Plaintiff's prior express consent, such consent was revoked when Defendant was given actual notice of Foreclosure Counsel's representation of Plaintiff with regard to the Debt.

104.    The telephone calls made by Defendant complained of herein are the result of repeated willful and knowing violation of the TCPA.

105.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered:

        a.    The periodic loss of his cellular phone service;

        b.    Lost material costs associated with the use of peak time cellular phone  minutes allotted under his cellular phone service contract.

        c.    The expenditure of costs and attorney's fees associated with the prosecution of this matter, along with other damages which have been lost;

        d.    Stress, anxiety, loss of sleep, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing calls placed in violation of the TCPA; and

        e.    Statutory damages.

### COUNT FIVE:
### REAL ESTATE SETTLEMENT PROCEDURES ACT
### VIOLATION OF 12 U.S.C., SECTION 2605(e)

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

106.    Defendant is subject to, and has violated provisions of, 12 U.S.C., Section 2605(e) by failing to provide a written response acknowledging receipt of a qualified written request within 20 days of receipt and failing to provide a written explanation and clarification in response to a qualified written request within 60 days of receipt.

107.   Defendant is the servicer of a "federally related mortgage loan" as that term is defined in Section 2602(1) of Title 12 of the United States Code.

108.   Defendant did not, within 20 days of receipt of the "qualified written request," acknowledge receipt of the "qualified written request" as required by Section 2605(e)(1)(A) of Title 12 of the United States Code.

109.   Defendant did not, within 60 days of receipt of the "qualified written request," provide the information requested and inform Plaintiff of its actions as required by Section 2605(e)(1)(B)(2) of Title 12 of the United States Code.

110.   Defendant has failed to comply and has engaged in a pattern or practice of noncompliance with Section 2605 of Title 12 of the United States Code.

111.   As a direct and proximate result of Defendant's actions, Plaintiff has sustained damages as defined by 12 U.S.C Section 2605(f).

## COUNT SIX:
## DECLARATORY AND INUNCTIVE RELIEF

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

112.   Unless Defendant is immediately enjoined from continued collection attempts and foreclosure proceedings in its attempts to illegally collect the Debt from Plaintiff, Plaintiff will suffer irreparable injury.

113.   Plaintiff has no adequate remedy at law.

114.   Plaintiff has a clear legal right to the protections of the FCCPA and the TCPA.

115.    Given Defendant's conduct and its apparent intention and ability to continue to collect the Debt directly from Plaintiff in violation of said laws, Plaintiff has no adequate remedy at law.  Plaintiff needs and is entitled to injunctive relief.

116.    The requested injunction is reasonably necessary to protect the legal rights of Plaintiff and will have no adverse effect on the public welfare.

### PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of the Defendant's conduct, Plaintiff respectfully requests against Defendant entry of:

a.      Judgment against Defendant declaring that the Defendant violated the FCCPA, the TCPA, and the RESPA;

b.      Judgment against Defendant for maximum statutory damages for Defendant's violations of the FCCPA per independent, temporally displaced violation;

c.      Judgment against Defendant for statutory damages in the amount of $500.00 for each of Defendant's telephone call that violated the TCPA;

d.      Judgment against Defendant for treble damages in the amount of $1,500.00 for each telephone call that violated the TCPA for which Defendant acted knowingly and/or willfully;

e.      Judgment against Defendant for maximum statutory damages for Defendant's violations of the RESPA;

f.      Judgment providing declaratory and injunctive relief, prohibiting Defendant from further engaging in conduct that violates the TCPA and the FCCPA;

g.      Judgment against Defendant for actual damages, in an amount to be

determined at trial;

h.      Judgment against Defendant for an award of attorneys' fees and costs; and

i.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this potential litigation as required by law.

Respectfully Submitted,

**LEAVENLAW**

☒ Ian R. Leavengood, Esq., FBN 0010167
☐ **Aaron M. Swift, Esq., FBN 93088**
☐ **G. Tyler Bannon, Esq., FBN 105718**
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone: (727) 327-3328
Fax: (727) 327-3305
ileavengood@leavenlaw.com
aswift@leavenlaw.com
tbannon@leavenlaw.com
*Attorneys for Plaintiff*